UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

UNITED STATES OF AMERICA          :

            v.                    :    **COUNSEL'S AFFIRMATION**

**OYEWALE OLANIBI** ,              :    **07 Cr. 899 (VM)**

                                  :

                Defendant.        :

----------------------------------X

    **ROLAND THAU,** hereby affirms under penalties of perjury pursuant to 28 U.S.C. §1746:

    1.  I am a staff attorney with the Federal Defender of New York, Inc., and trial counsel to the defendant.  I make this affirmation in support of my client's motion pursuant to Federal Rules of Criminal Procedure 12 and 41 to suppress certain physical evidence seized from him, his computer bag, his computer and his home, as well as all post-arrest statements attributed to him.  The legal bases for this motion are set forth in our notice of motion and will be developed in our accompanying memorandum of law.

    All statements made herein are based on information and belief, unless otherwise indicated.  The sources for my information and belief are the pleadings and discovery in this case and information obtained from Mr. Olanibi himself.

    2.  Olanibi is charged in a three count indictment with use of a credit card issued to another person without that person's

authorization to obtain cash from automatic teller machines in violation of 18 United States Code 1029(a)(5)and 2 and with related charges in violation of 18 United States Code 1028(a)(1) and (a)(7).

3.  Before the defendant's arrest, the authorities had learned that a number of telephone calls were made to the GE Money Bank instructing that depositors' addresses be changed to 439 W. 50th St, New York, NY, box **403** following which electronic transfers were made from depositor's accounts to another bank and that the funds so transferred were withdrawn and not recovered by GE Money Bank.

49 W. 50th St. is a laundromat which also rents out mailboxes. A person there informed the authorities that "one of the four males who collected mail for Box Nos. 403, 402, 306 and 103, had called and visited the Laundromat . . . . asking about the package for Box No. 402." (Emphasis added), Complaint §4 e.

4.  On the day of his arrest, Mr. Olanibi who had previously rented mailbox No. 402 and not any of the other mailboxes whose numbers as set forth above, went to the Laundromat, carrying a lap top computer bag and retrieved a package addressed to Box No. 402 from an employee there. Box 402 had never been a subject of a complaint in connection with the charged scheme.

5.  Mr. Olanibi was arrested and handcuffed and his laptop bag was taken from him by the arresting postal inspectors.  He did not consent to a search of that bag nor did the inspectors had a search warrant for it or its contents.

6.  The postal inspectors opened the laptop bag, searched it and retrieved a significant number of documents and papers which furnished the evidentiary basis for a search warrant application for the contents of the computer which had been in the bag and for Mr. Olanibi's apartment.

The search warrant was granted by the court, executed by the authorities and additional information was obtained from the pewter and physical items were seized from the defendant's apartment.

Mr. Olanibi did not consent to a search of his computer nor to a search of his apartment.

The defendant urges suppression of all the physical evidence seized and of any postarrest statements made, first on the ground that the authorities lacked probable cause to arrest him, such that the seizures and the statements are all "fruits of the poisonous tree" and argues further and alternatively that even if there was probable cause to arrest him or reasonable suspicion justifying an investigatory "<u>Terry</u>" stop, the warrantless and

non-consensual   search of his laptop bag

Mr. Lopez is charged in a two-count indictment with <u>Count I</u>, possession of cocaine with intent to distribute in  violation of 21 U.S.C. Sections 812, 841(a)(1), and 841(b)(1)(C) and in <u>Count II</u> with possessing two firearms during and in relation to a drug trafficking offense in  violation of 18 U.S.C. Sections 924(c)(1)(A)(i).

3. According to the complaint in this case as well as other documents provided by the government in discovery, Mr. Lopez was arrested at about 3:40 a.m., August 3, 2005.  The police allege that as they were on routine patrol duty, they observed Mr. Lopez in the driver's seat of an automobile whose motor was running and that he and another individual (later identified as Griselle Lopez) seated in the front passenger seat appeared to be arguing.

4.   The documentation alleges that two police officers approached the car and noticed a strong odor of alcohol coming from it, and that Mr. Lopez' breath smelt of alcohol, following which Mr. Lopez was asked if he had been drinking alcohol and is

4

said to have answered in the affirmative, whereupon he was arrested for operating a motor vehicle under the influence of alcohol.

5.  Following his arrest, Mr. Lopez is said to have had a .32 caliber handgun in a pocket.  The undersigned does not <u>himself</u> attack the legality of Mr. Lopez's arrest nor move to suppress the weapon allegedly found on his person, but, as noted in our separate letter of January 31, 2006, to the court, Mr. Lopez himself does urge <u>pro se</u> that the court rule that his arrest was lacking probable cause such that the weapon just mentioned as well as the rest of the physical evidence and his post-arrest statements be suppressed.

6.  The complaint alleges that after Mr. Lopez was taken from the scene of the arrest to the 41st police precinct, an "inventory search" of his car was conducted and that this search of the trunk of the car yielded what appeared to be cocaine and "drug paraphernalia". It goes on to say "in the console of the car, they found two additional glassines containing a white, powdery substance that appeared to be cocaine."

7.  A separate and presumably subsequent search of the car revealed a .38 caliber revolver in the glove compartment of the car.

8.  Mr. Lopez' passenger was Griselle López.  She too was arrested immediately after the police found the first weapon on

Mr. Lopez and, judging from the documents in this case, she was arrested before the police saw and recovered the contraband yielded in the alleged "inventory search".

9. Although Mr. Lopez was arrested August 3, 2006, at about 3:40 a.m., a Wednesday when the Bronx Criminal Court and this court were open for business, he was not promptly taken before a judicial officer but  kept in police custody, removed from the 41st precinct to another police location and questioned at length until 6:30 p.m., some 15 hours after his arrest when he finally wrote and signed the post-arrest statement sought to be suppressed.

10. According to the complaint, Mr. Lopez was then once again questioned by the police and is alleged to have made another, oral and still more self-incriminating statement than the one he had written at 6:30p.m., about 15 hours after his arrest. The documentation does not tell how long after the first (written) statement was made, the oral statement was taken.

11.  Mr. Lopez was not brought before a judicial officer (United States Magistrate Judge Frank Maas) until the afternoon of August 4, 2005, 33 or more hours after his arrest.  We infer that the police which, under New York State and federal law, is required to produce an arrestee before a judicial officer without unnecessary delay failed to do so when courts were open in order to interrogate him.

6

**WHEREFORE**, it is respectfully requested **by the undersigned** that the Court issue an ORDER suppressing the .38 revolver, the narcotics, the "narcotic paraphernalia" and the post-arrest statements on the grounds that the alleged "inventory search" was not authorized by law under the circumstances, that the statements were unattenuated fruit of the unlawful search and were taken long after Mr. Lopez should have been taken before a judicial officer. **Mr. Lopez, <u>pro se</u>, requests separately** that the .32 caliber pistol be suppressed as his arrest lacked probable cause. He joins the undersigned's motion to the extent that it moves for suppression **but disassociates himself from the undersigned's election to not seek suppression of the .32 caliber pistol** and he requests that the Court set an evidentiary hearing on all these motions.

Dated:  New York, New York
        January 31, 2006,


                        /S/_____
                        **ROLAND THAU, ESQ.**



                                7