UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                 :

          - v. -                         :     07 Cr. 899 (VM)

OYEWALE OLANIBI,                         :
      a/k/a "Joseph Abad,"
                                         :
                Defendant.
                                         :
- - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE



                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              One Saint Andrew's Plaza
                              New York, New York 10007




Antonia M. Apps
Assistant United States Attorney
      -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this opposition to the motion of defendant Oyewale Olanibi (referred to herein as "Olanibi" or "the defendant") to suppress evidence found in a computer bag that the defendant was carrying at the time of his arrest, and to suppress evidence found in the defendant's home pursuant to a search warrant that was based upon the evidence found in the defendant's computer bag. See Defendant's Pre-Hearing Memorandum of Law in Support of His Motion To Suppress (filed Jan. 29, 2008) ("Def's Mem." ).

The defendant's motion should be denied because there was probable cause to arrest the defendant and his computer bag was lawfully searched pursuant to the inventory search exception to the warrant requirement. Accordingly, the search warrant of the defendant's home was likewise valid.

The defendant has also requested a hearing. In view of the evidence submitted in connection with this opposition, the Government respectfully submits that a hearing is not necessary.

## FACTUAL BACKGROUND

A.    Procedural Background

The defendant was arrested on August 23, 2007, and charged in a Complaint, dated August 24, 2007, with committing access device fraud in violation of Title 18, United States Code, Sections 1029(a)(5) and 2, and aggravated identity theft in

1

violation of Title 18, United States Code, Section 1028A(a)(1).

See Complaint (Aug. 24, 2007) ("Cplt.") (attached as Exhibit A hereto).  The defendant was presented and arraigned on the Complaint before Magistrate Judge Theodore H. Katz on August 24, 2007.  The defendant is currently in custody.

An indictment was returned on September 24, 2007, charging the defendant in three counts.  Count One charged Olanibi with effecting transactions with access devices issued to other persons without authorization, to receive payment and other things of value exceeding $1,000 during a one-year period, in violation of Title 18, United States Code, Sections 1029(a)(5) and 2.  Count Two charged Olanibi with transferring, possessing, and using, without authority, a means of identification of another person during and in relation to the felony violation charged in Count One, in violation of Title 18, United States Code, Section 1028A(a)(1).  Count Three charged Olanibi with transferring, possessing, and using, without lawful authority, a means of identification of another person with the intent to commit, aid and abet, and in connection with, unlawful activity that constitutes a violation of federal law or a felony violation under state law, in violation of Title 18, United States Code, Section 1028(a)(7).

The Government produced discovery to the defendant on October 15, 2007 and February 5, 2008.

A.    Law Enforcement's Investigation

As set forth in more detail in the Complaint, GE Money bank contacted the United States Postal Inspection Service ("USPIS") in early 2007 to report that several customer accounts had been the subject of fraudulent activity.  Specifically, GE Money Bank told Postal Inspectors that the addresses on various victim accounts had been changed, without authorization of the account holders, to 439 West 50th Street, New York, New York, Box No. 403.  Cplt. ¶ 4(a)-(c).  Following the address changes, an individual called GE Bank to make electronic funds transfers out of the victim accounts to other bank accounts.  Id.  These transfers were not authorized by the true account holders. Following the electronic funds transfers to the other banks, and before the fraud was detected, the money was withdrawn from the other banks.  Id.  Over $40,000 was stolen from the two victim accounts set forth in the Complaint, and the account addresses for these two victim accounts were changed to 439 West 50th Street, Box No. 403, at least three times over the course of one month.  Id.

B.    Evidence Connecting Olanibi to the Investigation

Postal Inspector Andre Esannason (the affiant for the Complaint), visited the business located at 439 West 50th Street on or about August 17, 2007.  Cplt. ¶ 4(d).  The business was a Laundromat that also rents mail boxes.  Postal Inspector

3

Esannason spoke with one of the owners of the Laundromat.  The owner told him that there were "four males that regularly collected the mail" for Box No. 403 – the address used for the compromised GE Money Bank accounts – and three other Boxes, namely Box Nos. 402, 306, and 103.  Id.

Five days later, on August 22, 2007, Postal Inspector Esannason was contacted by another one of the Laundromat's owners, and was told that one of the four males who collected the mail for the four mail boxes had called and visited the Laundromat in person the day before, on August 21, 2007, to ask about a package he expected to be delivered to Box No. 402. Cplt. ¶ 4(e).  The package arrived on August 22, 2007.  Id.  The Laundromat owner informed Postal Inspectors that the package, which arrived on August 22, 2007, was addressed to a particular individual (referred to herein as "Victim 1").  See Declaration of Postal Inspector Andre Esannason ¶ 2 (February 11, 2008) ("Esannason Decl.") (attached as Exhibit B hereto).  This owner also told Postal Inspector Esannason that the mail that was delivered to all four mailboxes was addressed to numerous different individuals.  Id.  Postal Inspectors conducted a review of law enforcement databases and determined that Victim 1's social security number belonged to a woman who lived in Maryland. Id.

On August 23, 2007, while conducting surveillance, the
Postal Inspectors observed Olanibi enter the Laundromat and ask
for the package that was delivered for Box No. 402.  Cplt.
¶ 4(f).   Olanibi was carrying a computer bag.  He took the
package and other mail for Box No. 402 into the bathroom, and
exited shortly thereafter carrying only the computer bag.
Olanibi then existed the Laundromat.  Id.

      C.    Olanibi's Suspicious Conduct The Day of the Arrest

        Olanibi left the Laundromat on foot, and Postal
Inspectors followed him.  Esannason Decl. ¶ 3.  Postal Inspectors
stopped him a short time later, while Olanibi was on the
sidewalk, and identified themselves.  Id.  They then asked
Olanibi some questions.  Id.  Olanibi proceeded to tell the
Postal Inspectors a series of lies.  Postal Inspector Esannason
asked Olanibi where he was coming from.  Id.  Olanibi said he was
coming from work.  Id.  When asked if he had gone to the
Laundromat at 439 West 50th Street, Olanibi said "no."  Id.  In
response to the question of whether he picked up any packages or
mail at the Laundromat, Olanibi also said "no."  Id.  At that
point, Postal Inspector Esannason informed Olanibi that he had
seen Olanibi at the Laundromat accepting a package.  Id.  Postal
Inspector Esannason then asked Olanibi if he would come to the
station to discuss the matter.  Olanibi consented to do this.
Id.  Because Olanibi was a large man and the Postal Inspectors

did not do a pat down to ensure that he was not carrying weapons, they handcuffed him when they placed him in their car.  Id. Olanibi was formally arrested at the USPIS station in Midtown a short time later.  Id.

C.    The Search of Olanibi's Computer Bag

Shortly after Olanibi was arrested at the station, the Postal Inspectors conducted an inventory search of Olanibi's computer bag pursuant to the standardized procedures of the USPIS.  See Esannason Decl. ¶ 4, Exh. A.  In accordance with those procedures, the Postal Inspectors completed a form headed "Search Warrant Inventory," listing all of the items that were found in Olanibi's computer bag and on his person.  Id. ¶ 5, Exh. B.

Among the items found in Olanibi's computer bag were:

i)    personal identification information, including names, addresses, dates of birth, and social security numbers, for at least 17 different individuals;

ii)   five account numbers for bank accounts at Washington Mutual Bank, and an account number for an account at Bank of America;

iii)  a New York identification card and an Ohio driver's license, both in the name of "Oyewale Aderibige Olanibi"; the Ohio driver's license states that Olanibi's social security number is "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";

iv)   a Social Security card with the social security number "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";

6

> v)   five envelopes with the address 439 West 50th Street, Box No. 402, on them, each with a different name (none of them Olanibi's name); and
>
> vi)   a Washington Mutual credit card belonging to someone else (referred to herein as "Victim 2"), along with Victim 2's account number and a Post Office Box number handwritten on a piece of paper, and four receipts for the withdrawal of cash in the amount of $500.00 each on August 17, 2007, August 18, 2007, August 19, 2007 and August 22, 2007, from four different Washington Mutual Automatic Teller Machines, two in the Bronx, and two in Brooklyn, each showing the withdrawals from Victim 2's account.[1]

Cplt. ¶ 4(i).

D.    The Search Warrant for Olanibi's Home and Computer

Based on the facts set forth above, and the evidence found in Olanibi's computer bag, the Government applied for a search warrant to search Olanibi's residence and to search the computer that was found in his bag.   United States Magistrate Judge Theodore H. Katz granted the application for the search warrant on September 20, 2007.   On September 21, 2007, Postal Inspectors searched Olanibi's apartment and found numerous documents containing the personal identification information of multiple individuals.[2]

_____

[1]Postal Inspector Esannason has confirmed with Victim 2 that these withdrawals were not authorized and that Victim 2 did not give Olanibi or anyone else permission to use her personal identification information.   Cplt. ¶ 5.

[2]The FBI has yet to complete its analysis of the computer.

**ARGUMENT**

**I.   THERE WAS PROBABLE CAUSE TO ARREST THE DEFENDANT**

"Probable cause to arrest exists 'if the law
enforcement official, on the basis of the totality of the
circumstances, has sufficient knowledge or reasonably trustworthy
information to justify a person of reasonable caution in
believing that an offense has been or is being committed by the
person to be arrested." United States v. Wallace, 97 Cr. 975
(RWS), 1998 WL 401534, *5 (S.D.N.Y. July 17, 1998) (quoting
United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990)); see
also United States v. Henderson, 122 Fed. Appx. 535, 537, 2005 WL
332793, *2 (2d Cir. 2005) ("Probable cause requires 'fair
probability' under the 'totality of the circumstances' that the
arrestee have committed a crime.") (quoting Illinois v. Gates,
462 U.S. 213, 238 (1983)).

"To find that probable cause existed for an arrest, the
law enforcement officer need not demonstrate that it is more
probable than not that a crime has been or is being committed."
Wallace, 1998 WL 401534 at *5. "Rather, the standard of probable
cause 'requires only a probability or substantial chance of
criminal activity, not an actual showing of criminal activity.'"
Id. (quoting United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d
Cir. 1990)). "Additionally, while probable cause requires a
showing that a person 'of reasonable caution' would be warranted

in the belief that a crime has been committed, 'it does not
demand any showing that such a belief be correct or more likely
true than false.'" Id. (quoting Texas v. Brown, 460 U.S. 730, 742
(1983)).

In this case, Postal Inspector Esannason had learned
from GE Money Bank that Box No. 403 at the Laundromat had been
used repeatedly in connection with the theft of funds from
various accounts at GE Money Bank.  Significantly, this address
was provided to GE Money Bank for two different accounts on at
least three occasions, and after the address changes, funds had
been stolen from the accounts.  Thus, GE Money Bank mailed more
than one letter with victim information to Box 403, and that
information was received and used to engage in fraudulent
activity.  Additionally, the Laundromat owner had identified
Olanibi as one of the four males who collected the mail for Box
Nos. 403, 402, and two other boxes that received numerous other
people's mail.  Postal Inspectors also knew, based on information
provided by the Laundromat, that Olanibi had inquired about, by
telephone and in person, a package that was being delivered to
Box No. 402.  That package turned out to be address to someone
other than Olanibi, with the address of mailbox.  In short,
Postal Inspectors reasonably believed, before they even stopped
Olanibi for questioning, that he was involved in credit card
fraud and identity theft both because of his connection to Box

No. 403 and because of the fact that he was collecting someone else's mail from Box NO. 402, which had also been used to receive other people's mail in the past.  This law enforcement belief that criminal activity was afoot was bolstered by Olanibi's own suspicious behavior in lying to the Postal Inspectors about his actions.

That this combination of factors is sufficient to establish probable cause for arrest is demonstrated by a review of credit card cases in which Courts have found probable cause. In Henderson, for example, law enforcement officers learned that a "young black male" worked with a co-defendant to collect proceeds from credit card fraud and the "young black male" and the co-defendant had engaged in fraudulent transactions together. On the day of the arrest, agents observed the defendant – a young black male – in the car with the co-defendant when the co-defendant attempted to collect fraud proceeds.  The Court of Appeals held that there was probable cause to arrest the defendant as the co-defendant's accomplice.

Similarly, in United States v. Wai-Keung, 115 F.3d 874 (11th Cir. 1997), law enforcement agents learned that a group of Asian males were victimizing local stores with fraudulent credit cards.  One of the males ("Male 1") was caught on video with others involved in making a fraudulent purchase.  Subsequently, law enforcement saw the defendant Li Chi-Cheong ("Li") and two

10

other Asian males accompanying Male 1 in a store. Li, Male 1, and the two other males, left the store together, but then Male 1 departed, while Li and the other two males went to another store. When one of the two males with Li signed a credit card receipt at this second store, Li was standing next to him. Agents then stopped the three men and questioned them. The other two males produced phony identification and credit cards, but Li produced a driver's license in his own name and had no credit cards on him. The Eleventh Circuit held that there was nonetheless probable cause to arrest Li because he was clearly a member of a group that was suspected of engaging in criminal activity. Id. at 876-877.

Finally, in United States v. Smollar, 357 F. Supp. 628 (S.D.N.Y. 1972), law enforcement learned that credit cards had been lost on the defendant's mail route. Law enforcement gave a test letter to the defendant's supervisor, who in turn gave it to the defendant to deliver on his route. Law enforcement followed the defendant on his route. While the Postal Inspectors did not see what the defendant did with the letter, they discovered at the end of the route that the letter was not in addressee's mailbox and was not returned to the post office station. The court held that, while there were innocent explanations for the loss of the test letter – the letter was lost or delivered to the

wrong address - there was nevertheless probable cause to arrest
the defendant.  Id. at 631.

The defendant argues that there is no probable cause
because the "only link" between the defendant and Box No. 403 was
that the defendant had "previous contacts" with three other
boxes, including Box No. 403, and there was no evidence that the
defendant had "previous contact" with the owner of Box No. 403.
As an initial matter, the Complaint clearly states that Olanibi
collected mail for Box 403 in the past, not merely that he had
"previous contacts" with Box No. 403.  Cplt. ¶ 4(d).  The fact
that Olanibi collected mail from a "criminal box," as the
defendant puts it, "gives rise to a probability or substantial
chance of criminal activity."  Bakhtiari, 913 F.2d at 1062.
Further, the claim that there is no evidence of "previous
contact" with the owner of Box No. 403 is a red herring.  The
relevant connection is to the Box, not the person who owned it.
This connection, together with the fact that all four boxes were
used for fraudulent activity and the fact that Olanibi was eager
to pick up someone else's package, indicated that Olanibi was
involved in a joint criminal enterprise that engaged in access
device fraud and identity theft.

The defendant's argument that Olanibi must have been
"instrumental in causing stolen materials to be mailed" to Box
No. 403 to establish probable cause is wrong.  As stated above,

probable cause does not demand "an actual showing of criminal

activity."  Supra at 8.  In any event, Olanibi need not have been

the individual who called GE Money Bank to change the address, or

the individual who caused the fund transfers.  Collecting the

mail and knowingly passing the information on to his co-

conspirators is sufficient for aiding and abetting or conspiracy

liability.  And since law enforcement knew that Olanibi was one

of the individuals who collected the mail for Box No. 403, that

he was collecting a package for another related Box (Box No. 402)

that wasn't addressed to him, and that all four boxes for which

he collected mail were believed to be involved in fraudulent

activity, these facts, coupled with Olanibi's suspicious behavior

on questioning by the Postal Inspectors about his actions,

constituted sufficient information "to justify a person of

reasonable caution in believing that an offense [had] been

committed" by Olanibi.  Patrick, 899 F.2d at 171.[3]

---

[3]Olanibi's reliance on Ybarra v. Illinois, 444 U.S. 85
(1979) and Sibron v. New York, 392 U.S. 40 (1968) is misplaced.
Def's Mem. at 5.  This is not a case where the Government is
relying on Olanibi's mere presence at the scene of a crime.
Rather, the Government is relying on Olanibi's affirmative act of
collecting mail from the four boxes involved in fraud and his
subsequent suspicious behavior.  Compare Ybarra (finding pat down
search of and seizure from tavern patron impermissible because
police did not recognize defendant and had no reason to believe
that he had committed or was committing an offense); and Sibron
(stating probable cause did not exist for a search where the
officer observed defendant talking to narcotics addicts but did
not know him or have information about him); with United States
v. Almanzar, 749 F. Supp. 538, 541 (S.D.N.Y. 1990) (finding
probable cause to arrest based in part on the fact that defendant

## II.  THE SEARCH OF THE DEFENDANT'S COMPUTER BAG WAS A LAWFUL INVENTORY SEARCH

The defendant argues that, even if the arrest was lawful, the search of the computer bag he was carrying the day of his arrest was not lawful because it was not incident to his arrest.  Def's Mem. at 6-7.  Olanibi's motion to suppress should be denied because the bag was lawfully searched pursuant to the inventory search exception to the warrant requirement.

"An inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched . . . for the sole purpose of investigation."  United States v. Arango-Correa, 551 F.2d 54, 59 (2d Cir. 1988) (search of defendants' car after it was seized was valid inventory search).  See also Illinois v. Lafayette, 462 U.S. 640 (1983) (inventory search of personal effects of arrestee at a police station was valid); United States v. O'Razvi, 97 Cr. 1250 (DLC), 1998 WL 405048, *6 (S.D.N.Y. July 17, 1998) (search of defendant's briefcase after he was taken into custody was lawful inventory search).  As the Supreme Court in Colorado v. Bertine, 479 U.S. 367 (1987) explained, "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost,

---

was present when the drug transaction went forward and coordination of activity, including defendant's conduct appeared to be more than coincidental).

stolen, or vandalized property, and to guard the police from danger." Id. at 372.

In this case, the Postal Inspectors followed standard USPIS procedures in conducting the search of Olanibi's computer bag. In accordance with the USPIS Field Legal Handbook (see Esannason Decl. Exh. A), Postal Inspectors complected a "Search Warrant Inventory" form listing the items found in Olanibi's bag. Id. Exh. B. Since there is no evidence to suggest that this inventory search was conducted in bad faith or for the sole purpose of investigation, the search was lawful and Olanibi's motion to suppress should be denied.

## III. THE SEARCH WARRANT FOR THE DEFENDANT'S HOME AND COMPUTER WERE LAWFUL

The defendant argues that the evidence found in Olanibi's home pursuant to the search warrant should be suppressed because it was based on the evidence found in Olanibi's computer bag. Def's Mem. at 7. Since the search of Olanibi's computer bag was lawful for the reasons set forth above, so too was the search of Olanibi's home pursuant to the search warrant that was based on evidence found in Olanibi's bag.

**CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress should be denied.

Dated: New York, New York
      February 8, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
    Antonia M. Apps
    Assistant United States Attorney
    (212) 637-2198